UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
**Sabrina Pritchard,**                              :

                Plaintiff,   :   **REPORT & RECOMMENDATION**

      - against -                         :   08 Civ. 7129 (SCR) (LMS)

**M.M.O. Music Group,**                             :

                Defendant.   :
------------------------------------------------------x

TO:   THE HONORABLE STEPHEN C. ROBINSON

     Plaintiff Sabrina Pritchard, proceeding *pro se*, brings this action against Defendant MMO Music Group ("MMO"), asserting claims of discrimination based on race, color, and age, in violation of Title VII, the Age Discrimination in Employment Act ("ADEA"), and the New York State Human Rights Law.  Amended Complaint, Docket # 4.  Now before the Court is MMO's motion for summary judgment.  Docket # 18.  For the reasons that follow, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's motion should be granted, and the action should be dismissed.

## BACKGROUND

     MMO is a corporation that has been in the music publication industry since 1950. Plaintiff's Local Rule 56.1 Statement ("Pl.'s 56.1") (Docket # 24) ¶ 2.  Irv Kratka ("Kratka") is the President/CEO of MMO.  Affidavit of Irv Kratka ("Kratka Aff.") (Docket # 21) ¶ 1.  Kratka hired Plaintiff to work in customer service on January 22, 2007.  Pl.'s 56.1 ¶ 3.  Plaintiff claims, "The reason I feel that I was discriminated against [sic] not only because of my race and age was soley

[sic] because I am Bobby Jones' girlfriend.[1]  Irv would e-mail me every week and tell me what a great job I was doing."  Amended Complaint, Section II.E.  After approximately five months at MMO, Plaintiff's employment was terminated on June 11, 2007.  Id. ¶ 5; but see Defendant's Local Rule 56.1 Statement ("Def.'s 56.1") (Docket # 22) ¶ 5 (Plaintiff was terminated on June 10, 2007).

According to MMO, Plaintiff was terminated because of dissatisfaction "with Plaintiff's ability to perform the duties of her position."  Def.'s 56.1 ¶ 4.  Kratka had sent Plaintiff e-mails on March 7, and March 8, 2007, outlining deficiencies in Plaintiff's job performance, including hiding invoices that she had not processed and reversing numbers on invoices, causing shipping errors.  Kratka Aff. ¶¶ 7-8 & Exs. A-B.  In addition, during the week of June 4, 2007, just prior to Plaintiff's termination, her direct supervisor found that Plaintiff had been accessing a soap opera website during business hours.  Id. ¶ 9.  In contrast, Plaintiff claims that Kratka "sent me e-mails to say how satisfied he was with my work performance.  I wa[s] never informed by Mr. Kratka that he was dissatisfied with my performance until after I went to Human Rights."  Pl.'s 56.1 ¶ 4.[2]

---

[1] Plaintiff's boyfriend, Bobby Jones, is the plaintiff in a separate lawsuit against MMO, Jones v. MMO Music Group, 08 Civ. 7125 (SCR)(LMS).

[2] It appears that in an attempt to refute MMO's contention that Plaintiff was dismissed for unsatisfactory performance of her job, she has attached to her opposition papers (Docket # 24) copies of e-mails from her subsequent employer, Stillman Management, in which she is complimented on her job performance.  In addition, Plaintiff has attached a copy of her resume.  Notably, the resume nowhere lists her employment with MMO.  Rather, it states that Plaintiff was employed as an Administrative Assistant at Mack-Cali, from July, 2005, to July, 2007, and was then employed as an Administrative Assistant at Stillman Management, from July, 2007, to August, 2008.  Interestingly, Plaintiff filed this lawsuit in August, 2008.
   The Court is quite disturbed by these documents, especially since they stand in direct contradiction to Plaintiff's statement that, "[o]nce I lost my employment from MMO, ***I was unable to obtain gainful employment***, my unemployment insurance ran out, I was evicted from two apartments and I am now living at the YMCA and I am receiving assistance from Social

Following her termination, Plaintiff filed a Verified Complaint with the New York State Division of Human Rights ("NYSDHR"). Bonnist Affirmation (Docket # 20) Ex. C. The NYSDHR held a conference in the matter on October 16, 2007. Id. Ex. D. The NYSDHR issued a Determination and Order After Investigation on February 28, 2008, finding no probable cause to believe that MMO had engaged in "the unlawful discriminatory practice complained of," i.e., there was insufficient evidence "to suggest that Complainant's race and/or alleged opposition to Respondent's discriminatory practices had anything to do with her termination from employment." Id. Ex. E. Plaintiff disputes this determination, claiming that she was not granted a fair hearing by the NYSDHR, since the individuals from MMO appeared and gave a statement in the morning, but Plaintiff did not appear until the afternoon. See Pl.'s 56.1 ¶¶ 8-9. On April 15, 2008, the Equal Employment Opportunity Commission adopted the findings of the NYSDHR and issued Plaintiff a "Dismissal and Notice of Rights," or "right-to-sue" letter. Bonnist Affirmation Ex. F. Plaintiff commenced this action on August 11, 2008. Docket # 2 (Complaint).

## DISCUSSION

**I.     Standard for Summary Judgment**

Under Rule 56, summary judgment should be "rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986).

---

Services." Interrogatories (Docket # 24) ¶ 11 (emphasis added). The submission of this contradictory evidence raises a substantial question regarding Plaintiff's veracity.

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

Local Civ. R. 56.1(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 250. The inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact. Id.

Where a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56. Under Local Rule 56.1(b), the papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried. Local Civ. R. 56.1(b). Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in original). Indeed, if the party opposing summary judgment does not respond to the motion, "summary

judgment should, if appropriate, be entered against the adverse party." Fed. R. Civ. P. 56(e). However, even where the nonmoving party fails to respond to a motion for summary judgment, the court

> may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*.

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)) (emphasis in original).

Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2. Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

Lastly, in a case such as this, where a *pro se* litigant is involved, "although the same standards for dismissal apply, a court should give the *pro se* litigant special latitude in responding to a summary judgment motion." McDowall v. Metro. Corr. Ctr., No. 08-Civ-8329, 2010 WL 649744, at *3 (S.D.N.Y. Feb. 22, 2010)[3] (citing McPherson v. Coombe, 174 F.3d 276, 280 (2d

---

[3]Copies of all unpublished opinions cited in this Report and Recommendation are attached hereto.

Cir.1999) (courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest' ") (citation omitted)). "In particular, the *pro se* party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment." Id. (citing Local Civil Rule 56 .2; McPherson, 174 F.3d at 281; Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-621 (2d Cir.1999)).

Here, MMO served Plaintiff with a Notice to Pro Se Litigant, Docket # 23, which advised her of the procedures for responding to the motion, including the requirement that she submit counter-evidence, and provided her with copies of Rule 56 and Local Rule 56.1.

## II. Plaintiff's Race Discrimination Claims under Title VII and the New York Human Rights Law

Plaintiff's race discrimination claims under Title VII and the New York Human Rights Law are evaluated in accordance with the "burden-shifting" framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). See Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008).[4]  "Under these cases, the plaintiff bears the initial burden of establishing

---

[4] The same legal analysis applies to Title VII and New York Human Rights Law claims. See Song v. Ives Labs., Inc., 957 F.2d 1041, 1046 (2d Cir. 1992).  However, the Court notes that Plaintiff's race discrimination claim under the New York Human Rights Law should be dismissed in any event due to Plaintiff's election of remedies. See N.Y. Exec. Law § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder or with any local commission on human rights . . . provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division."); Johnson v. County of Nassau, 411 F. Supp. 2d 171, 184 (E.D.N.Y. 2006) ("[O]nce a complainant elects the administrative forum by filing a complaint with the NYSDHR, a subsequent judicial action on the same complaint is generally barred unless one of the three exceptions in the statute is applicable.  The bar to suit is jurisdictional.") (citations omitted).  Here, in light of Plaintiff's

a prima facie case of discrimination. If the plaintiff does so, the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action. If such a reason is provided, plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of racial discrimination. 'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " Id. (quoting McDonnell Douglas, 411 U.S. at 802 and Burdine, 450 U.S. at 253).

### *Prima Facie Case of Discrimination*

To meet his or her burden of proving by a preponderance of the evidence a prima facie case of discrimination, a plaintiff "must show: (i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002) (internal quotation marks and citations omitted). "Generally speaking, a plaintiff's burden of establishing a prima facie case in the context of employment discrimination law is 'minimal.' " Id. (citation omitted).

While for purposes of this motion, MMO concedes that Plaintiff can establish the first three elements of a prima facie case, MMO argues that Plaintiff's prima facie case fails because she cannot establish the fourth element, namely, that her employment was terminated under

---

election to present her race discrimination claim under the state human rights law to the NYSDHR for adjudication, and the fact that none of the three exceptions set forth in Section 297(9) is applicable, the Court lacks subject matter jurisdiction over this claim.

circumstances giving rise to an inference of discrimination.[5]  Indeed, there is no evidence in the record from which one could infer discrimination based on Plaintiff's race in connection with her termination from MMO.  There are virtually no allegations to support claims of race discrimination in either the Amended Complaint[6] or Plaintiff's interrogatory responses.  Rather, the only allegations of discrimination based on race consist of allegations that Plaintiff was discriminated against based on her association with Bobby Jones.  See Interrogatories (Docket # 24) ¶ 7.

Moreover, Plaintiff has submitted no evidence to show that she was subjected to disparate

---

[5]While in both the Amended Complaint and her interrogatory responses Plaintiff alleges discriminatory conduct aside from her termination, see, e.g., Amended Complaint, Section II.A. (discriminatory conduct included unequal terms and conditions of employment, retaliation, and "defending my boyfriend constantly being harassed"), she fails to allege any adverse employment action taken against her apart from termination.  See Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) ("Employment actions that we have deemed sufficiently disadvantageous to constitute an adverse employment action include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.") (internal quotation marks and citations omitted).  To the extent that Plaintiff seeks to allege a separate claim of retaliation, there are simply no allegations, or evidence, to support such a claim.  See, e.g., Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006) (to present a prima facie case of retaliation under Title VII, "a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find [1] that [ ] he [or she] engaged in protected participation or opposition under Title VII . . ., [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.") (citations omitted).

[6]MMO argues that the action should be dismissed because Plaintiff failed to file her Amended Complaint within the 60-day period she was granted by Judge Wood's Order dated August 11, 2008 (Docket # 3).  However, Plaintiff attributes the delay to the fact that she had been evicted from her apartment and did not receive any mail until she was able to relocate.  Pl.'s 56.1 ¶ 12.  Despite the Court's concerns regarding Plaintiff's credibility, see footnote 2, supra, under the circumstances, and because Plaintiff is proceeding *pro se*, the Court declines to recommend that the action should be dismissed on this ground.

treatment based on her race. "A showing of disparate treatment – that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his [or her] protected group – is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks and citation omitted). Not only does Plaintiff provide no evidence that there were any other similarly situated employees at MMO who were treated any differently, but the Determination and Order from the NYSDHR states that "there was one other Customer Service Representative employed by [MMO]," and that person was "also Black." Bonnist Affirmation Ex. E.

 Plaintiff's race discrimination claims are additionally weakened by what is known as the "same actor inference," i.e., she was hired and fired by the same person within a relatively short period of time. "The Second Circuit has held that certain circumstances surrounding termination decisions strongly suggest that invidious discrimination was unlikely, including when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to him [or her] an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing has occurred only a short time after the hiring." Anderson v. Hertz Corp., 507 F. Supp. 2d 320, 329-30 (S.D.N.Y. 2007) (internal quotation marks and citations omitted), aff'd, 303 F. App'x 946 (2d Cir. 2008). In this case, since it is undisputed that Plaintiff was hired by Irv Kratka in January, 2007, and was terminated by Irv Kratka only five months later, in June, 2007, see Pl.'s 56.1 ¶¶ 3, 5, "the 'same actor' inference clearly applies here to further cast doubt on any potential inference of invidious discrimination in Plaintiff's termination." Anderson, 507 F. Supp. 2d at 330.

In light of Plaintiff's failure to establish the fourth element of a prima facie case, I conclude, and respectfully recommend that Your Honor should conclude, that MMO is entitled to summary judgment on Plaintiff's claims of race discrimination under Title VII and the New York Human Rights Law.

### III.     Plaintiff's Age Discrimination Claim under the ADEA

With respect to Plaintiff's claim for age discrimination under the ADEA, I conclude, and respectfully recommend that Your Honor should conclude, that this claim should be dismissed, since it is undisputed that MMO had fewer than 20 employees during 2006 and 2007, and thus, MMO is not subject to liability under the statute.  See Pl.'s 56.1 ¶ 6; 29 U.S.C. § 630(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. . . .").

### IV.     Plaintiff's Age Discrimination Claim under the New York Human Rights Law

The Title VII burden-shifting framework set forth in Section II., supra, likewise applies to Plaintiff's age discrimination claim brought under the New York Human Rights Law.  See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).  Once again, in considering Plaintiff's prima facie case, the question is whether Plaintiff has produced evidence that her termination occurred under circumstances giving rise to an inference of discrimination.

Plaintiff alleges that on three separate occasions, Irv Kratka mentioned that a lot of younger women had been applying for her position.  Interrogatories ¶ 6.  She "felt [Irv] was telling me in a round about way he wanted to hire younger women for the position.  At the time, I was the oldest female employee he had working for him in the office.  The first incident was

Thursday, April 12, 2007, the second incident was Wednesday, April 25, 2007 and the last one was Tuesday, May 8, 2007." Id. She further alleges that Irv Kratka told her that she was over-qualified for her position[7] and that after she was terminated, younger women were hired. Id. Plaintiff claims that when she went to MMO to get information about her termination, she "noticed that there was a young Caucasian girl sitting at my desk." Affirmation in Opposition to Motion (Docket # 24) ¶ 6.

Despite these allegations, there is no evidence in the record to support Plaintiff's conclusory assertion that "younger women were hired," nor is there any basis to conclude that the "young Caucasian" woman who was sitting at Plaintiff's desk was, in fact, the woman who replaced her in her position at MMO. The Determination and Order from the NYSDHR states that Plaintiff was "replaced by a Black female," Bonnist Affirmation Ex. E, and Plaintiff provides no evidence to the contrary.

Moreover, as with Plaintiff's claims of race discrimination, Plaintiff has submitted no evidence to show that she was subjected to disparate treatment based on her age. Mandell v. County of Suffolk, supra. There is no evidence in the record that there were any similarly situated employees at MMO who were treated any differently from Plaintiff.

Furthermore, not only does the same actor inference again apply with respect to Plaintiff's age discrimination claim to negate an inference of discrimination, but the inference of

---

[7]Insofar as Plaintiff insinuates that the stated reason for firing her, i.e., that she did not perform her job in a satisfactory manner, is pretextual, since she was actually overqualified for the job, the Court "considers the legitimacy of Defendant's stated reasons for taking the challenged action only after Plaintiff has successfully made out [her] prima facie case." Spiegler v. Israel Disc. Bank of New York, No. 01 Civ. 6364, 2003 WL 21488040, at *9 (S.D.N.Y. June 25, 2003), reconsideration denied, 2003 WL 21983018 (S.D.N.Y. Aug. 19, 2003).

discrimination is further undermined by the fact that Plaintiff was already within the protected age category when she was hired. See Amended Complaint, Section II.D. (Plaintiff was born on January 9, 1955, and was thus 52 years old when she was hired by Irv Kratka); Spiegler v. Israel Disc. Bank of New York, No. 01 Civ. 6364, 2003 WL 21488040, at *10 (S.D.N.Y. June 25, 2003) (fact that plaintiff was within protected age category when hired contradicted inference of discrimination) (citing cases), reconsideration denied, 2003 WL 21983018 (S.D.N.Y. Aug. 19, 2003).

In sum, given Plaintiff's failure to establish the fourth element of a prima facie case, I conclude, and respectfully recommend that Your Honor should conclude, that MMO is entitled to summary judgment on Plaintiff's claim of age discrimination under the New York Human Rights Law.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Your Honor should grant MMO's motion for summary judgment (Docket # 18), and the action should be dismissed.

## NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Robinson and should not be made to the undersigned.

Dated: March 23, 2010
       White Plains, New York

Respectfully submitted,

*/s/ Lisa Margaret Smith*
Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Stephen C. Robinson, U.S.D.J.

Sabrina Pritchard
87 South Broadway #306
Yonkers, NY 10701

Craig Bonnist, Esq.
Bonnist & Cutro, LLP
800 Westchester Avenue, Suite S-332
Rye Brook, NY 10573